# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| SynQor, Inc.<br><br>                    Plaintiff,<br><br>     v.<br><br>Ericsson, Inc.,<br>Cisco Systems, Inc., and<br>Vicor Corporation.<br><br><br>                    Defendants. | Civil Action No. 2:11-CV-54<br><br>**JURY TRIAL DEMANDED** |

## SYNQOR'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff SynQor, Inc. ("SynQor") for its complaint against Defendants Ericsson, Inc. ("Ericsson"), Cisco Systems, Inc. ("Cisco"), and Vicor Corp. ("Vicor") alleges the following:

## THE PARTIES

1.      Plaintiff SynQor is a Delaware corporation having a principal place of business at 155 Swanson Road, Boxborough, Massachusetts 01719.  SynQor is a leader in the design, development, manufacture, and sale of innovative DC/DC power converters and AC/DC power conversion solutions to the communications, computing, industrial, medical, and military markets.

2.      On information and belief, Defendant Ericsson is a Delaware corporation with its principal place of business at 6300 Legacy Drive, Plano TX 75024 within this judicial district. Defendant Ericsson makes, imports, uses, offers to sell, and/or sells within the United States, including the state of Texas and this judicial district, products, including, but not limited to,

unregulated and semi-regulated bus converters and/or non-isolated, regulated converters (now known as "POLs") used in intermediate bus architecture power supply systems.

3.      On information and belief, Defendant Vicor is a Delaware corporation with its principal place of business at 25 Frontage Road, Andover, MA 01810-5499.  Defendant Vicor makes, imports, uses, offers to sell, and/or sells within the United States, including the state of Texas and this judicial district, products, including, but not limited to, unregulated bus converters used in intermediate bus architecture power supply systems.

4.      On information and belief, Defendant Cisco is a California corporation with its principal place of business at Tasman Drive in San Jose, CA 95134.  Defendant Cisco makes, imports, uses, offers to sell, and/or sells within the United States, including the state of Texas and this judicial district, products incorporated unregulated and semi-regulated bus converters and POLs used in intermediate bus architecture power supply systems.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

6.      Defendants are conducting business on a systematic and continuous basis within the United States, including the state of Texas and this judicial district.  Defendant Ericsson has its principal place of business in this judicial district.

7.      Defendants Ericsson and Vicor infringe the patents at issue in this action when they make, import, use, promote, offer to sell, and/or sell within the United States, including the state of Texas and this judicial district, products, including, but not limited to, unregulated and/or semi-regulated bus converters and/or POLs used in intermediate bus architecture power supply

systems.  Ericsson and Vicor target products to customers, such as computer and telecommunications equipment manufacturers, including Cisco, that sell and ship products all over the world, including in this District.  Defendants Ericsson and Vicor reasonably expect that these products will be sold into this District through the manufacturers they target for the products.

8.      On information and belief, Defendant Cisco is one of Ericsson's and Vicor's customers, and Cisco makes, imports, uses, offers to sell, and/or sells within the United States, including the state of Texas and this judicial district, products incorporating unregulated and semi-regulated bus converters with POLs in intermediate bus architecture power supply systems which infringe the patents at issue in this action.

9.      Defendants are subject to personal jurisdiction in this judicial district because they have established minimum contacts with the forum such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice and have committed acts of infringement in this judicial district.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

11.     Further, this patent infringement case is directly related to *SynQor, Inc. v. Artesyn Technologies, Inc. et al*, Civil Action No. 2:07-cv-00497-TJW-CE ("the '497 case") filed in this judicial district on November 13, 2007 before the Honorable T. John Ward.  The '497 case alleged infringement of the very same SynQor patents that are at issue in this case and involved some of the same products that are at issue in this case.  The '497 jury found that products sold by Cisco, which included the '497 defendants' bus converters, infringe the five SynQor patents asserted here – and Cisco has indicated that Ericsson's bus converters are used by Cisco

interchangeably with the '497 defendants' infringing bus converters in the same infringing applications.  Cisco has further indicated that Vicor bus converters are being qualified for such applications as well.  And, Cisco was explicitly identified in the Court's injunction order in the '497 case.  Because the '497 case and this one are related and because this Court is already familiar with the SynQor patents and the issues raised by this Complaint, venue in this district would conserve resources and promote judicial efficiency.

## GENERAL ALLEGATIONS

12.     SynQor is the assignee and owner of all rights, title, and interest in U.S. Patent No. 7,072,190 ("the '190 patent"), entitled "High Efficiency Power Converter."  The '190 patent was duly and legally issued on July 4, 2006, by the United States Patent and Trademark Office.  A true and correct copy of the '190 patent is attached hereto as Exhibit A.

13.     SynQor is the assignee and owner of all rights, title, and interest in U.S. Patent No. 7,272,021 ("the '021 patent"), entitled "Power Converter with Isolated and Regulated Stages."  The '021 patent was duly and legally issued on September 18, 2007, by the United States Patent and Trademark Office.  A true and correct copy of the '021 patent is attached hereto as Exhibit B.

14.     SynQor is the assignee and owner of all rights, title, and interest in U.S. Patent No. 7,269,034 ("the '034 patent"), entitled "High Efficiency Power Converter."  The '034 patent was duly and legally issued on September 11, 2007, by the United States Patent and Trademark Office.  A true and correct copy of the '034 patent is attached hereto as Exhibit C.

15.     SynQor is the assignee and owner of all rights, title, and interest in U.S. Patent No. 7,558,083 ("the '083 patent"), entitled "High Efficiency Power Converter."  The '083 patent

was duly and legally issued on July 7, 2009, by the United States Patent and Trademark Office. A true and correct copy of the '083 patent is attached hereto as Exhibit D.

16.    SynQor is the assignee and owner of all rights, title, and interest in U.S. Patent No. 7,564,702 ("the '702 patent"), entitled "High Efficiency Power Converter."  The '702 patent was duly and legally issued on July 21, 2009, by the United States Patent and Trademark Office. A true and correct copy of the '702 patent is attached hereto as Exhibit E.

17.    The patents at issue here are the same ones that were at issue in the '497 case. The Fourth Amended Complaint in the '497 case alleged that defendants Artesyn Technologies, Inc. ("Artesyn"), Astec America, Inc. ("Astec"), Bel Fuse Inc. ("Bel Fuse"), Cherokee International Corp. ("Cherokee"), Delta Electronics, Inc., Delta Products Corp. (collectively, "Delta"), Murata Electronics North America, Inc., Murata Manufacturing Co., Inc. (collectively, "Murata"), Power-One, Inc. ("Power-One"), Lineage Power Corporation ("Lineage"), and Murata Power Solutions Inc. ("MPS") (collectively, "the '497 defendants") infringed, actively induced infringement of, and/or contributorily infringed the '190, '021, '034, '083, and '702 patents.

18.    The '497 case was tried to a jury before Judge Ward on December 13, 2010 through December 21, 2010.  On December 21, 2010, the jury found that the '497 defendants directly infringed, induced infringement of, and/or contributed to infringement of the '190, '021, '034, '083, and '702 patents.  Specifically, the jury in the '497 case found that:

a.    Artesyn directly infringed claim 1 of the '083 patent (Verdict Form (attached hereto as Exhibit F) at 1), and induced infringement of and contributed to infringement of claims 2, 8, 10 and 19 of the '190 patent, claims 21 and 30 of the

'021 patent, claim 1 of the '083 patent, claims 56 and 71 of the '702 patent, and claim 9 of the '034 patent (Ex. F at 10-11);

b.  Astec directly infringed claim 1 of the '083 patent (Ex. F at 2) and induced infringement of and contributed to infringement of claims 2, 8, 10 and 19 of the '190 patent, claims 21 and 30 of the '021 patent, claim 1 of the '083 patent, and claims 56 and 71 of the '702 patent (Ex. F at 12-13);

c.  Bel Fuse directly infringed claims 2, 8, and 19 of the '190 patent, claims 21 and 30 of the '021 patent, claim 1 of the '083 patent, and claims 56 and 71 of the '702 patent (Ex. F at 9) and induced infringement of and contributed to infringement of claims 2, 8, 10 and 19 of the '190 patent, claims 21 and 30 of the '021 patent, claim 1 of the '083 patent, and claims 56 and 71 of the '702 patent (Ex. F at 14-15);

d.  Cherokee directly infringed claim 1 of the '083 patent (Ex. F at 3) and induced infringement of and contributed to infringement of claims 2, 8, 10 and 19 of the '190 patent, claims 21 and 30 of the '021 patent, claim 1 of the '083 patent, and claims 56 and 71 of the '702 patent (Ex. F at 16-17);

e.  Lineage directly infringed claim 1 of the '083 patent (Ex. F at 4) and induced infringement of and contributed to infringement of claims 2, 8, 10 and 19 of the '190 patent, claims 21 and 30 of the '021 patent, claim 1 of the '083 patent, claims 56 and 71 of the '702 patent, and claim 9 of the '034 patent (Ex. F at 18-19);

f.  Delta directly infringed claim 1 of the '083 patent (Ex. F at 5) and induced infringement of and contributed to infringement of claims 2, 8, 10 and 19 of the

'190 patent, claims 21 and 30 of the '021 patent, claim 1 of the '083 patent, claims

56 and 71 of the '702 patent, and claim 9 of the '034 patent (Ex. F at 20-21);

g.   MPS directly infringed claim 1 of the '083 patent (Ex. F at 6) and induced

infringement of and contributed to infringement of claims 2, 8, 10 and 19 of the

'190 patent, claims 21 and 30 of the '021 patent, claim 1 of the '083 patent, and

claims 56 and 71 of the '702 patent (Ex. F at 22-23);

h.   Murata directly infringed claim 1 of the '083 patent (Ex. F at 7) and induced

infringement of and contributed to infringement of claims 2, 8, 10 and 19 of the

'190 patent, claims 21 and 30 of the '021 patent, claim 1 of the '083 patent, and

claims 56 and 71 of the '702 patent (Ex. F at 24-25);

i.   Power-One directly infringed claim 1 of the '083 patent (Ex. F at 8) and induced

infringement of and contributed to infringement of claims 2, 8, 10 and 19 of the

'190 patent, claims 21 and 30 of the '021 patent, claim 1 of the '083 patent, claims

56 and 71 of the '702 patent, and claim 9 of the '034 patent (Ex. F at 26-27).

19.     The jury in the '497 case found that none of the asserted claims of the '190, '021,

'034, '083, and '702 patents are invalid.  (Ex. F at 28-32.)

20.     The jury's December 21, 2010 verdict also awarded SynQor a combination of lost

profits and reasonable royalty damages, which collectively totaled Ninety-Five Million, Two

Hundred Twenty-Four Thousand, and Eight Hundred Sixty-Three Dollars ($95,224,863).  (Ex. F

at 33-41.)

21.     When awarding lost profits damages, the jury necessarily found that there were no

acceptable noninfringing alternatives to the '497 defendants' infringing products.  At trial, the

'497 defendants presented evidence and argued to the jury that Ericsson's and Vicor's bus

converters were acceptable noninfringing alternatives to the infringing unregulated and semi-regulated bus converters.  In response, SynQor presented evidence to the '497 jury that Ericsson's and Vicor's bus converters would infringe claims of the '190, '021, '034, '083, and '702 patents, for instance when used in place of the '497 defendants' bus converters in Cisco's products, and thus could not be considered noninfringing alternatives.  Judge Ward instructed the '497 jury that in order to award any lost profits damages, it needed to find that there were no acceptable noninfringing alternatives to the unregulated bus converters and semi-regulated bus converters the jury found to infringe.  (Transcript of Jury Trial (Dec. 21, 2010, Morning Sess.) (attached hereto as Exhibit G) at 156:24-157:10.)  By awarding lost profits damages, the jury necessarily found that the Ericsson and Vicor bus converters would infringe claims of the '190, '021, '034, '083, and '702 patents, including when used in place of the '497 defendants' bus converters in Cisco's products.  Indeed, Judge Ward recognized this in his Memorandum Opinion and Order granting the permanent injunction (attached hereto as Exhibit H) when he noted "the jury in the present case found that SynQor was entitled to lost profits, which based on the damage model presented at trial, implies that the jury believed that there were not any non-infringing alternatives."  (Ex. H at 15-16.)

22.     On December 29, 2010, Judge Ward entered Partial Judgment in accordance with the jury's verdict awarding SynQor its lost profits and reasonable royalty damages (attached hereto as Exhibit I).

23.     On January 24, 2011, Judge Ward entered a Permanent Injunction (attached hereto as Exhibit J) permanently enjoining the '497 defendants, their "officers, agents, servants, employees, and attorneys," and "other persons who receive actual notice of this injunction, through personal service or otherwise, who are in active concert or participation with the

Defendant Companies or their agents, servants, employees, and/or attorneys" ("the Enjoined Parties") from manufacturing, using, selling, and offering for sale in the United States and/or importing into the United States the unregulated and semi-regulated bus converters that were found by the '497 case jury to infringe the '190, '021, '034, '083, and '702 patents.  (Ex. J at 1, 3.)  The Permanent Injunction also provided a list of parties, including Cisco, that use one or more of the Enjoined Products in making directly infringing products for sale in and/or importation into the United States.  (Ex. J at 6-7.)

24.     The January 24, 2011 injunction also prohibited the Enjoined Parties from inducing infringement of the '190, '021, '034, '083, and '702 patents by aiding and abetting that infringement by selling any of the Enjoined Products (the infringing unregulated and semi-regulated bus converters and products made by the '497 defendants that incorporate those bus converters) to companies that in-turn sell products incorporating them in or into the United States.  (Ex. J at 5-6.)

25.     The January 24, 2011 injunction further prohibited the Enjoined Parties from contributing to the infringement of one or more of the '190, '021, '034, '083, and '702 patents by supplying the Enjoined Products to companies in the United States.  (Ex. J at 6.)

26.     In addition, the January 24, 2011 injunction stated that the '497 defendants are on notice that various companies, including Cisco (either directly, or through affiliates and/or contract manufacturers) use one or more of the Enjoined Products in making directly infringing products for sale in and/or importation into the United States.  (Ex. J at 6-7.)  And, the Enjoined Parties were ordered to send a copy of the injunction order to Cisco and other identified customers.  (Ex. J at 7.)

27.     Cisco was actively involved in both the jury trial in the '497 case and at the permanent injunction hearing held on January 19-20, 2011.  In both instances, Cisco sent witnesses at Cisco's own expense to provide live testimony.  Moreover, on information and belief, Cisco actively acted in concert with the '497 defendants during the pendency of the '497 case.  As Judge Ward noted in the Memorandum Opinion and Order accompanying the Permanent Injunction (attached hereto as Exhibit H), "Cisco made the conscious effort to align itself with [the '497] Defendants."  (Ex. H at 16.)

28.     The '497 jury found that Cisco's products containing the '497 defendants' accused bus converters infringe the '190, '021, '034, '083, and '702 patents at issue in the '497 case and here.  Cisco was thus found to be a direct infringer in the '497 case and was therefore far from an innocent third party in that case.

29.     After the jury verdict, the Court held a hearing on SynQor's permanent injunction motion.  In response, the '497 defendants injected three declarations from Cisco employees.

30.     All three Cisco affiants attended and testified at the permanent injunction hearing in the '497 case.  There, through the testimony of Mr. Robert Ballenger and Mr. Jeff Purnell, Cisco disclosed its intention to avoid the effect of the Court's injunction by employing Ericsson and Vicor bus converters, apparently including bus converters the '497 case jury found to infringe the '190, '021, '034, '083, and '702 patents, including when used in place of the '497 defendants' bus converters in Cisco's products, through its award of lost profits in the '497 case.

31.     Despite participating in proceedings before this Court when it served its purposes, Cisco is now looking to another forum for judicial relief.  On January 26, 2011, Cisco filed a declaratory judgment action against SynQor in the District of Delaware (Complaint attached hereto as Exhibit K), citing a "reasonable apprehension" that "SynQor will initiate litigation

asserting a claim that systems or services offered for sale and sold by Cisco that contain or implement systems supplied to Cisco by its suppliers infringe the ['190, '021, '034, '083, and '702] Patent[s]."  (*See, e.g.*, Ex. K at 5-8.)  In its Delaware Complaint, Cisco alleged that "[m]ore than 200 of Cisco's products include unregulated bus converters and semi-regulated bus converters supplied to Cisco by . . . Artesyn Technologies, Inc., Astec America, Inc., Emerson Network Power, Inc., Emerson Electric Co., Bel Fuse Inc., Cherokee International Corp., Delta Electronics, Inc., Delta Products Corp., Murata Electronics North America, Inc., Murata Manufacturing Co., Inc., Power-One, Inc., Tyco Electronics Corp., Tyco Electronics Ltd., Tyco Electronics Power Systems, Inc., Lineage Power Corporation, Murata Power Solutions Inc., and Ericsson Inc."  (Ex. K at 3.)  Cisco's complaint also mentioned the '497 case.  (Ex. K at 3.)

32.     Well aware of this Court's proceedings in the '497 case, on January 26, 2011, defendant Vicor filed its own declaratory judgment action – this one in the District of Massachusetts (Complaint attached hereto as Exhibit L).  Like Cisco, Vicor alleges that it has an apprehension of suit based on what transpired in the '497 case.  (*See, e.g.*, Ex. L at 4.)

33.     On information and belief, Vicor has been on notice of the '190, '021, '034, '083, and '702 patents and SynQor's allegations since at least July 27, 2010 when it received a subpoena in the '497 case.  Vicor produced documents relating to the design and operation of Vicor's bus converters, and, on September 11, 2010, a Vicor representative was deposed in the '497 case.

34.     On information and belief, Ericsson has also been on notice of the '190, '021, '034, '083, and '702 patents and SynQor's allegations since at least July 27, 2010 when it received a subpoena in the '497 case.

35.     Cisco also produced documents and provided live testimony in the '497 case. And, at the permanent injunction hearing in the '497 case, Cisco acknowledged that it has been on notice of the '190, '021, '034, '083, and '702 patents and SynQor's allegations since at least the summer of 2009.

## COUNT ONE
## Ericsson's Infringement of the '190 Patent

36.     Each of the foregoing paragraphs is incorporated by reference.

37.     Ericsson has been and is now infringing, actively inducing infringement of, and/or contributorily infringing the '190 patent pursuant to 35 U.S.C. § 271.  The infringing acts have included, but are not limited to, the manufacture, use, promotion, sale, importation, and/or offer for sale of products, including, but not limited to, unregulated bus converters and/or POLs used in intermediate bus architecture power supply systems.

38.     Accused products, such as unregulated bus converters, which are used to practice the claims of the '190 patent, are known by Ericsson to be especially made or adapted for use in an infringement of the '190 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

39.     Ericsson's past and continued acts of infringement of the '190 patent have injured SynQor and thus SynQor is entitled to recover compensatory damages for the infringement in an amount subject to proof at trial.

40.     As Judge Ward has already found with respect to the '497 defendants, Ericsson's infringement of SynQor's exclusive rights under the '190 patent will continue to damage SynQor's business, causing irreparable injury to SynQor, for which there is no adequate remedy at law, unless Ericsson is enjoined by this Court from further infringement.

41.     And, Ericsson has long been on notice of the '190 patent.  Accordingly, Ericsson's infringement of the patents-in-suit has been and/or will continue to be willful and deliberate. This entitles SynQor to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT TWO
## Ericsson's Infringement of the '021 Patent

42.     Each of the foregoing paragraphs is incorporated by reference.

43.     Ericsson has been and is now infringing, actively inducing infringement of, and/or contributorily infringing the '021 patent pursuant to 35 U.S.C. § 271.  The infringing acts have included, but are not limited to, the manufacture, use, promotion, sale, importation, and/or offer for sale of products, including, but not limited to, unregulated bus converters and/or POLs used in intermediate bus architecture power supply systems.

44.     Accused products, such as unregulated bus converters, which are used to practice the claims of the '021 patent, are known by Ericsson to be especially made or adapted for use in an infringement of the '021 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

45.     Ericsson's past and continued acts of infringement of the '021 patent have injured SynQor and thus SynQor is entitled to recover compensatory damages for the infringement in an amount subject to proof at trial.

46.     As Judge Ward has already found with respect to the '497 defendants, Ericsson's infringement of SynQor's exclusive rights under the '021 patent will continue to damage SynQor's business, causing irreparable injury to SynQor, for which there is no adequate remedy at law, unless Ericsson is enjoined by this Court from further infringement.

47.     And, Ericsson has long been on notice of the '021 patent.  Accordingly, Ericsson's

infringement of the patents-in-suit has been and/or will continue to be willful and deliberate.

This entitles SynQor to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs

incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT THREE
### Ericsson's Infringement of the '034 Patent

48.     Each of the foregoing paragraphs is incorporated by reference.

49.     Ericsson has been and is now infringing, actively inducing infringement of, and/or

contributorily infringing the '034 patent pursuant to 35 U.S.C. § 271.  The infringing acts have

included, but are not limited to, the manufacture, use, promotion, sale, importation, and/or offer

for sale of products, including, but not limited to, semi-regulated bus converters, and/or POLs

used in intermediate bus architecture power supply systems.

50.     Accused products, such as semi-regulated bus converters, which are used to

practice the claims of the '034 patent, are known by Ericsson to be especially made or adapted

for use in an infringement of the '034 patent, and are not staple articles or commodities of

commerce suitable for substantial non-infringing uses.

51.     Ericsson's past and continued acts of infringement of the '034 patent have injured

SynQor and thus SynQor is entitled to recover compensatory damages for the infringement in an

amount subject to proof at trial.

52.     As Judge Ward has already found with respect to the '497 defendants, Ericsson's

infringement of SynQor's exclusive rights under the '034 patent will continue to damage

SynQor's business, causing irreparable injury to SynQor, for which there is no adequate remedy

at law, unless Ericsson is enjoined by this Court from further infringement.

53.     And, Ericsson has long been on notice of the '034 patent.  Accordingly, Ericsson's infringement of the patents-in-suit has been and/or will continue to be willful and deliberate. This entitles SynQor to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT FOUR
### Ericsson's Infringement of the '083 Patent

54.     Each of the foregoing paragraphs is incorporated by reference.

55.     Ericsson has been and is now directly infringing, actively inducing infringement of, and/or contributorily infringing the '083 patent pursuant to 35 U.S.C. § 271.  The infringing acts have included, but are not limited to, the manufacture, use, promotion, sale, importation, and/or offer for sale of products, including, but not limited to, unregulated bus converters.

56.     Accused products, such as unregulated bus converters, which are used to practice the claims of the '083 patent, are known by Ericsson to be especially made or adapted for use in an infringement of the '083 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

57.     Ericsson's past and continued acts of infringement of the '083 patent have injured SynQor and thus SynQor is entitled to recover compensatory damages for the infringement in an amount subject to proof at trial.

58.     As Judge Ward has already found with respect to the '497 defendants, Ericsson's infringement of SynQor's exclusive rights under the '083 patent will continue to damage SynQor's business, causing irreparable injury to SynQor, for which there is no adequate remedy at law, unless Ericsson is enjoined by this Court from further infringement.

59.     And, Ericsson has long been on notice of the '083 patent.  Accordingly, Ericsson's infringement of the patents-in-suit has been and/or will continue to be willful and deliberate. This entitles SynQor to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT FIVE
## Ericsson's Infringement of the '702 Patent

60.     Each of the foregoing paragraphs is incorporated by reference.

61.     Ericsson has been and is now infringing, actively inducing infringement of, and/or contributorily infringing the '702 patent pursuant to 35 U.S.C. § 271.  The infringing acts have included, but are not limited to, the manufacture, use, promotion, sale, importation, and/or offer for sale of products, including, but not limited to, unregulated bus converters and/or POLs used in intermediate bus architecture power supply systems.

62.     Accused products, such as unregulated bus converters, which are used to practice the claims of the '702 patent, are known by Ericsson to be especially made or adapted for use in an infringement of the '702 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

63.     Ericsson's past and continued acts of infringement of the '702 patent have injured SynQor and thus SynQor is entitled to recover compensatory damages for the infringement in an amount subject to proof at trial.

64.     As Judge Ward has already found with respect to the '497 defendants, Ericsson's infringement of SynQor's exclusive rights under the '702 patent will continue to damage SynQor's business, causing irreparable injury to SynQor, for which there is no adequate remedy at law, unless Ericsson is enjoined by this Court from further infringement.

65.     And, Ericsson has long been on notice of the '702 patent.  Accordingly, Ericsson's infringement of the patents-in-suit has been and/or will continue to be willful and deliberate. This entitles SynQor to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT SIX
### Vicor's Infringement of the '190 Patent

66.     Each of the foregoing paragraphs is incorporated by reference.

67.     Vicor has been and is now infringing, actively inducing infringement of, and/or contributorily infringing the '190 patent pursuant to 35 U.S.C. § 271.  The infringing acts have included, but are not limited to, the manufacture, use, promotion, sale, importation, and/or offer for sale of products, including, but not limited to, unregulated bus converters used in intermediate bus architecture power supply systems.

68.     Accused products, such as unregulated bus converters, which are used to practice the claims of the '190 patent, are known by Vicor to be especially made or adapted for use in an infringement of the '190 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

69.     Vicor's past and continued acts of infringement of the '190 patent have injured SynQor and thus SynQor is entitled to recover compensatory damages for the infringement in an amount subject to proof at trial.

70.     As Judge Ward has already found with respect to the '497 defendants, Vicor's infringement of SynQor's exclusive rights under the '190 patent will continue to damage SynQor's business, causing irreparable injury to SynQor, for which there is no adequate remedy at law, unless Vicor is enjoined by this Court from further infringement.

71.     And, Vicor has long been on notice of the '190 patent.  Accordingly, Vicor's infringement of the patents-in-suit has been and/or will continue to be willful and deliberate. This entitles SynQor to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT SEVEN
## Vicor's Infringement of the '021 Patent

72.     Each of the foregoing paragraphs is incorporated by reference.

73.     Vicor has been and is now infringing, actively inducing infringement of, and/or contributorily infringing the '021 patent pursuant to 35 U.S.C. § 271.  The infringing acts have included, but are not limited to, the manufacture, use, promotion, sale, importation, and/or offer for sale of products, including, but not limited to, unregulated bus converters used in intermediate bus architecture power supply systems.

74.     Accused products, such as unregulated bus converters, which are used to practice the claims of the '021 patent, are known by Vicor to be especially made or adapted for use in an infringement of the '021 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

75.     Vicor's past and continued acts of infringement of the '021 patent have injured SynQor and thus SynQor is entitled to recover compensatory damages for the infringement in an amount subject to proof at trial.

76.     As Judge Ward has already found with respect to the '497 defendants, Vicor's infringement of SynQor's exclusive rights under the '021 patent will continue to damage SynQor's business, causing irreparable injury to SynQor, for which there is no adequate remedy at law, unless Vicor is enjoined by this Court from further infringement.

77.     And, Vicor has long been on notice of the '021 patent.  Accordingly, Vicor's infringement of the patents-in-suit has been and/or will continue to be willful and deliberate. This entitles SynQor to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT EIGHT
## Vicor's Infringement of the '702 Patent

78.     Each of the foregoing paragraphs is incorporated by reference.

79.     Vicor has been and is now infringing, actively inducing infringement of, and/or contributorily infringing the '702 patent pursuant to 35 U.S.C. § 271.  The infringing acts have included, but are not limited to, the manufacture, use, promotion, sale, importation, and/or offer for sale of products, including, but not limited to, unregulated bus converters used in intermediate bus architecture power supply systems.

80.     Accused products, such as unregulated bus converters, which are used to practice the claims of the '702 patent, are known by Vicor to be especially made or adapted for use in an infringement of the '702 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

81.     Vicor's past and continued acts of infringement of the '702 patent have injured SynQor and thus SynQor is entitled to recover compensatory damages for the infringement in an amount subject to proof at trial.

82.     As Judge Ward has already found with respect to the '497 defendants, Vicor's infringement of SynQor's exclusive rights under the '702 patent will continue to damage SynQor's business, causing irreparable injury to SynQor, for which there is no adequate remedy at law, unless Vicor is enjoined by this Court from further infringement.

83.     And, Vicor has long been on notice of the '702 patent.  Accordingly, Vicor's infringement of the patents-in-suit has been and/or will continue to be willful and deliberate. This entitles SynQor to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT NINE
### Cisco's Infringement of the '190 Patent

84.     Each of the foregoing paragraphs is incorporated by reference.

85.     Cisco has been and is now directly infringing, actively inducing infringement of, and/or contributorily infringing the '190 patent pursuant to 35 U.S.C. § 271.  The infringing acts have included, but are not limited to, the manufacture, use, promotion, sale, importation, and/or offer for sale of products incorporating unregulated bus converters with POLs (including those built into Cisco's load board) in intermediate bus architecture power supply systems.

86.     Accused products incorporating unregulated bus converters with POLs in intermediate bus architecture power supply systems which practice the claims of the '190 patent, are known by Cisco to be especially made or adapted for use in an infringement of the '190 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

87.     Cisco's past and continued acts of infringement of the '190 patent have injured SynQor and thus SynQor is entitled to recover compensatory damages for the infringement in an amount subject to proof at trial.

88.     As Judge Ward has already found with respect to the '497 defendants, Cisco's infringement of SynQor's exclusive rights under the '190 patent will continue to damage

SynQor's business, causing irreparable injury to SynQor, for which there is no adequate remedy at law, unless Cisco is enjoined by this Court from further infringement.

89.     And, Cisco has long been on notice of the '190 patent.  Accordingly, Cisco's infringement of the patents-in-suit has been and/or will continue to be willful and deliberate. This entitles SynQor to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**COUNT TEN**
**Cisco's Infringement of the '021 Patent**

90.     Each of the foregoing paragraphs is incorporated by reference.

91.     Cisco has been and is now directly infringing, actively inducing infringement of, and/or contributorily infringing the '021 patent pursuant to 35 U.S.C. § 271.  The infringing acts have included, but are not limited to, the manufacture, use, promotion, sale, importation, and/or offer for sale of products incorporating unregulated bus converters with POLs (including those built into Cisco's load board) in intermediate bus architecture power supply systems.

92.     Accused products incorporating unregulated bus converters with POLs in intermediate bus architecture power supply systems which practice the claims of the '021 patent, are known by Cisco to be especially made or adapted for use in an infringement of the '021 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

93.     Cisco's past and continued acts of infringement of the '021 patent have injured SynQor and thus SynQor is entitled to recover compensatory damages for the infringement in an amount subject to proof at trial.

94.     As Judge Ward has already found with respect to the '497 defendants, Cisco's infringement of SynQor's exclusive rights under the '021 patent will continue to damage SynQor's business, causing irreparable injury to SynQor, for which there is no adequate remedy at law, unless Cisco is enjoined by this Court from further infringement.

95.     And, Cisco has long been on notice of the '021 patent.  Accordingly, Cisco's infringement of the patents-in-suit has been and/or will continue to be willful and deliberate. This entitles SynQor to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT ELEVEN
### Cisco's Infringement of the '034 Patent

96.     Each of the foregoing paragraphs is incorporated by reference.

97.     Cisco has been and is now directly infringing, actively inducing infringement of, and/or contributorily infringing the '034 patent pursuant to 35 U.S.C. § 271.  The infringing acts have included, but are not limited to, the manufacture, use, promotion, sale, importation, and/or offer for sale of products incorporating semi-regulated bus converters with POLs (including those built into Cisco's load board) in intermediate bus architecture power supply systems.

98.     Accused products incorporating semi-regulated bus converters with POLs in intermediate bus architecture power supply systems which practice the claims of the '034 patent, are known by Cisco to be especially made or adapted for use in an infringement of the '034 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

99.     Cisco's past and continued acts of infringement of the '034 patent have injured SynQor and thus SynQor is entitled to recover compensatory damages for the infringement in an amount subject to proof at trial.

100.    As Judge Ward has already found with respect to the '497 defendants, Cisco's infringement of SynQor's exclusive rights under the '034 patent will continue to damage SynQor's business, causing irreparable injury to SynQor, for which there is no adequate remedy at law, unless Cisco is enjoined by this Court from further infringement.

101.    And, Cisco has long been on notice of the '034 patent.  Accordingly, Cisco's infringement of the patents-in-suit has been and/or will continue to be willful and deliberate. This entitles SynQor to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT TWELVE
### Cisco's Infringement of the '083 Patent

102.    Each of the foregoing paragraphs is incorporated by reference.

103.    Cisco has been and is now directly infringing, actively inducing infringement of, and/or contributorily infringing the '083 patent pursuant to 35 U.S.C. § 271.  The infringing acts have included, but are not limited to, the manufacture, use, promotion, sale, importation, and/or offer for sale of products incorporating unregulated bus converters.

104.    Accused products incorporating unregulated bus converters, which are used to practice the claims of the '083 patent, are known by Cisco to be especially made or adapted for use in an infringement of the '083 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

105.     Cisco's past and continued acts of infringement of the '083 patent have injured

SynQor and thus SynQor is entitled to recover compensatory damages for the infringement in an

amount subject to proof at trial.

106.     As Judge Ward has already found with respect to the '497 defendants, Cisco's

infringement of SynQor's exclusive rights under the '083 patent will continue to damage

SynQor's business, causing irreparable injury to SynQor, for which there is no adequate remedy

at law, unless Cisco is enjoined by this Court from further infringement.

107.     And, Cisco has long been on notice of the '083 patent.  Accordingly, Cisco's

infringement of the patents-in-suit has been and/or will continue to be willful and deliberate.

This entitles SynQor to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs

incurred in prosecuting this action under 35 U.S.C. § 285.


**COUNT THIRTEEN**
**Cisco's Infringement of the '702 Patent**

108.     Each of the foregoing paragraphs is incorporated by reference.

109.     Cisco has been and is now directly infringing, actively inducing infringement of,

and/or contributorily infringing the '702 patent pursuant to 35 U.S.C. § 271.  The infringing acts

have included, but are not limited to, the manufacture, use, promotion, sale, importation, and/or

offer for sale of products incorporating unregulated bus converters with POLs (including those

built into Cisco's load board) in intermediate bus architecture power supply systems.

110.     Accused products incorporating unregulated bus converters with POLs in

intermediate bus architecture power supply systems which are used to practice the claims of the

'702 patent, are known by Cisco to be especially made or adapted for use in an infringement of

the '702 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

111.    Cisco's past and continued acts of infringement of the '702 patent have injured SynQor and thus SynQor is entitled to recover compensatory damages for the infringement in an amount subject to proof at trial.

112.    As Judge Ward has already found with respect to the '497 defendants, Cisco's infringement of SynQor's exclusive rights under the '702 patent will continue to damage SynQor's business, causing irreparable injury to SynQor, for which there is no adequate remedy at law, unless Cisco is enjoined by this Court from further infringement.

113.    And, Cisco has long been on notice of the '702 patent.  Accordingly, Cisco's infringement of the patents-in-suit has been and/or will continue to be willful and deliberate. This entitles SynQor to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## REQUEST FOR RELIEF

Wherefore, SynQor respectfully requests that the Court:

A.    order trial by jury on all issues so triable;

B.    render judgment finding that Ericsson has infringed, directly, by inducement and/or contributorily, the '190, '021, '034, '083, and '702 patents;

C.    render judgment finding that Vicor has infringed, directly, by inducement and/or contributorily, the '190, '021, and '702 patents;

D.    render judgment finding that Cisco has infringed, directly, by inducement and/or contributorily, the '190, '021, '034, '083, and '702 patents;

E.    find that the Ericsson's infringement was willful;

F.      find that Vicor's infringement was willful;

G.      find that Cisco's infringement was willful;

H.      issue a preliminary injunction preventing Ericsson, and those in active concert with Ericsson, from further infringement, inducement of infringement, or contributory infringement of the '190, '021, '034, '083, and '702 patents;

I.      issue a permanent injunction preventing Ericsson, and those in active concert with Ericsson, from further infringement, inducement of infringement, or contributory infringement of the '190, '021, '034, '083, and '702 patents;

J.      issue a preliminary injunction preventing Vicor, and those in active concert with Vicor, from further infringement, inducement of infringement, or contributory infringement of the '190, '021, and '702 patents;

K.      issue a permanent injunction preventing Vicor, and those in active concert with Vicor, from further infringement, inducement of infringement, or contributory infringement of the '190, '021, and '702 patents;

L.      issue a preliminary injunction preventing Cisco, and those in active concert with Cisco, from further infringement, inducement of infringement, or contributory infringement of the '190, '021, '034, '083, and '702 patents;

M.      issue a permanent injunction preventing Cisco, and those in active concert with Cisco, from further infringement, inducement of infringement, or contributory infringement of the '190, '021, '034, '083, and '702 patents;

N.      award compensatory damages in an amount to be determined at trial;

O.      award enhanced damages up to and including treble damages pursuant to 35 U.S.C. § 284;

P.      award interest as allowed by law;

Q.      declare that this case is exceptional pursuant to 35 U.S.C. § 285, award costs and

reasonable attorney fees incurred in connection with this action; and

R.      grant such other and further relief as the Court and the jury deem just and proper.


Dated:  January 28, 2011                          _/s/ David T. DeZern_____
                                                  **Michael D. Hatcher**
                                                  Texas State Bar No. 24027067
                                                  mhatcher@sidley.com
                                                  **David T. DeZern**
                                                  Texas State Bar No. 24059677
                                                  ddezern@sidley.com
                                                  SIDLEY AUSTIN LLP
                                                  717 North Harwood, Suite 3400
                                                  Dallas, TX 75201
                                                  Telephone:     214.981.3400
                                                  Facsimile:      214.981.3400

                                                  **Thomas D. Rein**
                                                  Lead Attorney
                                                  *Pro Hac Vice Application To Be Filed*
                                                  trein@sidley.com
                                                  **Russell E. Cass**
                                                  *Pro Hac Vice Application To Be Filed*
                                                  rcass@sidley.com
                                                  **Paul E. Veith**
                                                  *Pro Hac Vice Application To Be Filed*
                                                  pveith@sidley.com
                                                  **Stephanie P. Koh**
                                                  *Pro Hac Vice Application To Be Filed*
                                                  skoh@sidley.com
                                                  SIDLEY AUSTIN LLP
                                                  One South Dearborn
                                                  Chicago, IL 60603
                                                  Telephone:     312.853.7000
                                                  Facsimile:      312.853.7036