**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SYNQOR, INC. | |
| Plaintiff, | Civ. No. 2:11-CV-54-MHS-CMC |
| v. | **JURY TRIAL DEMANDED** |
| CISCO SYSTEMS, INC., and VICOR CORPORATION | |
| Defendants. | |

**SYNQOR, INC.'S OPPOSITION TO DEFENDANT CISCO SYSTEMS, INC.'S**
**MOTION FOR LEAVE TO AMEND SUPPLEMENTAL INVALIDITY CONTENTIONS**

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT .........................................................................................................2

        A.      Cisco's Proposed Amendments Are Untimely and Would Prejudice SynQor.........2

        B.      Cisco's Proposed Amendments Are Otherwise Futile. ...........................................6

III.    CONCLUSION......................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*3M Innovative Properties Co. v. Tredegar Corp.*,
    725 F.3d 1315 (Fed. Cir. 2013)...............................................................................6

*Ariad Pharms., Inc. v. Eli Lilly and Co.*,
    598 F.3d 1336 (Fed. Cir. 2010)............................................................................4, 6

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
    715 F.3d 891 (Fed. Cir. 2013)................................................................................4

*Cephalon, Inc. v. Watson Pharms., Inc.*,
    707 F.3d 1330 (Fed. Cir. 2013)..............................................................................5

*Energy Transp. Group, Inc. v. William Demant Holding A/S*,
    697 F.3d 1342 (Fed. Cir. 2012)..............................................................................7

*ePlus, Inc. v. Lawson Software, Inc.*,
    700 F.3d 509 (Fed. Cir. 2012)................................................................................6

*Intel Corp. v. VIA Techs., Inc.*,
    319 F.3d 1357 (Fed. Cir. 2003)..............................................................................8

*IPXL Holdings, LLC v. Amazon.com, Inc.*,
    430 F.3d 1377 (Fed. Cir. 2005)..............................................................................8

*KCJ Corp. v. Kinetic Concepts, Inc.*,
    223 F.3d 1351 (Fed. Cir. 2000)..............................................................................7

*S&W Enterprises, LLC v. Southwest Bank of Ala., N.A.*,
    315 F.3d 533 (5th Cir. 2003) ..............................................................................2, 6

## I.        INTRODUCTION

Plaintiff SynQor Inc. ("SynQor") provided defendant Cisco Systems, Inc. ("Cisco") with supplemental infringement contentions addressing Cisco's alleged "fully regulated" replacement converters in March 2013.  In those infringement contentions, SynQor explained that Cisco's replacement bus converters are "in fact non-regulating" because "they are unregulated . . . at least at certain input voltages within the operational range of the accused Cisco end products."  Ex. 1 (Excerpt of March 8, 2013 '190 Claim Chart) at 2.  At Cisco's request, SynQor agreed to give Cisco more than seven weeks to prepare and submit supplemental invalidity contentions in response to SynQor's amended contentions.  Cisco then went on to serve amended invalidity contentions in May 2013, without making any of the contentions it seeks to make at this time. But now, with claim construction concluded and expert disclosure deadlines rapidly approaching, Cisco wants to amend its invalidity contentions yet again to add new arguments that the claims are invalid under Section 112 if they cover converters like the ones accused in March 2013 that are unregulated over part (but not all) of the converter's operation.  (*See* Dkt. No. 302, Opposed Mot. for Leave to Amend Def. Cisco Systems, Inc.'s Supp. Invalidity Contentions ("Mot.").)

Recognizing that the timing of this belated defense would be challenged, Cisco attempts to manufacture a justification from recent deposition testimony of the named inventor, Dr. Schlecht, and one of SynQor's experts, Dr. Leeb.  But this testimony adds nothing of substance to what Cisco knew from SynQor's contentions back in March 2013.  At the very least, Cisco should have attempted to raise these issues as part of the now-concluded claim construction proceedings.  Had it done so, and had the Court permitted it to do so, the attendant claim construction issues would have been resolved in the Markman ruling.  Permitting amendment at this late date would prejudice SynQor.  By contrast, there will be no harm if the amendments are

denied because the newly-manufactured defenses are legally flawed and are thus futile, as explained below.  Cisco's motion should be denied.[1]

## II.    ARGUMENT

### A.    Cisco's Proposed Amendments Are Untimely and Would Prejudice SynQor.

Establishing "good cause" for permitting its amendment requires Cisco to show that it could not reasonably have put forth its proposed contentions earlier despite its diligence, and to explain its failure to meet the relevant deadlines.  *See S&W Enterprises, LLC v. Southwest Bank of Ala., N.A.*, 315 F.3d 533, 535–36 (5th Cir. 2003).  Cisco cannot do so because it has been on notice for more than nine months of the information it claims it needed to make its proposed contentions—it has not been diligent and has no explanation for its delay.  Nor can Cisco establish good cause because permitting its amendment now would prejudice SynQor.  *See id.* at 536.

As noted above, on March 8, 2013, SynQor provided Cisco with a supplemental disclosure of infringement contentions addressing Cisco end products containing certain new

---

[1] On January 3, 2013, Defendant Vicor Corporation ("Vicor") filed a document styled as a "Notice of Joinder" to Cisco's motion, purporting to "fully adopt[ ] the arguments presented" in Cisco's motion and requesting leave to serve amended invalidity contentions.  (Dkt. No. 307.)  A "Notice of Joinder" to another party's motion is not a proper vehicle to request an order for leave to amend, at least because Vicor has made no "showing of good cause" as required by P.R. 3-6(b) of the Local Patent Rules.  Vicor cannot adopt a set of facts purporting to show good cause for its own amendment when those facts are specific to Cisco, setting out actions Cisco took and the dates on which it took them.  (*See* Mot. at 8–12.)  For example, Cisco's motion describes how Cisco notified SynQor that it intended to seek leave to amend its contentions, provided the proposed amendments, and met-and-conferred with SynQor (*see id.* at 9)—but Vicor has done nothing of the like.  Regardless, even if Vicor's "Notice of Joinder" were effective under P.R. 3-6(b) (and it is not), Vicor should be denied leave to amend its invalidity contentions for the same reasons outlined herein in opposition to Cisco's motion, and Vicor's filing cannot be construed to seek leave to amend other than along the identical lines proposed by Cisco.

replacement bus converters[2] that Cisco asserted were "fully-regulated," and thus (allegedly) non-infringing, but in fact were unregulated within their intended operating range.  *See* Ex. 2 (3/8/13 DeZern Email to Cisco).  Cisco agreed not to oppose SynQor's motion for leave to supplement its infringement contentions, provided that Cisco was given the opportunity to amend its invalidity contentions in response.  (*See* Dkt. No. 234 (Unopposed Mot. for Leave to Amend).)  Cisco then served amended invalidity contentions in May 2013, but did not make the contentions it seeks to make now—that if SynQor's claims are broad enough to cover Cisco's end products with these new replacement bus converters, those claims are invalid under 35 U.S.C. § 112 ¶ 1 or ¶ 2.

Cisco's attempt to manufacture a justification for its untimely contentions from recent deposition testimony of Dr. Schlecht and Dr. Leeb fails, because SynQor's March 2013 contentions contained all the information Cisco could possibly need to assert its new theories.  For example, with respect to the '190 patent's limitation "a non-regulating isolation stage comprising . . . ," SynQor's contentions explained:

> Though Cisco and many of the datasheets for the new CPNs assert that these new CPNs are ***regulated or fully regulated***, the new CPNs in fact are non-regulating, including to the extent that ***they are unregulated*** or non-regulating isolation stages ***at least at certain input voltages within the operational range of the accused Cisco end products*** . . . .

Ex. 1 (Excerpt of March 8, 2013 '190 Claim Chart) at 2 (emphasis added).  That disclosure flatly contradicts Cisco's claim that "[o]nly the recent deposition of inventor Dr. Schlecht . . . revealed that SynQor is improperly trying to expand the scope of the patents to encompass ***regulated or fully regulated*** converters that purportedly have an 'unregulated' mode over a portion of an

---

[2] Cisco replaced the bus converters found to infringe in SynQor's prior '497 case with these new replacement bus converters.

operating range."  (Mot. 8 (emphasis in original).)  Cisco had no need for Dr. Schlecht's testimony to come up with its new invalidity arguments, because SynQor had disclosed exactly those contentions in its March 2013 disclosures.  Cisco even explicitly acknowledged as much in its May 2013 contentions, referring to "SynQor's accusations in its Second Supplemental Invalidity Contentions and Third Supplemental Invalidity Contentions, in which it accuses regulated converters of being non-regulated."[3]  Ex. 3 (May 17, 2013 Cisco Supp. Invalidity Contentions) at 5.  Cisco does not offer any explanation for its failure to set forth these invalidity arguments in its May 2013 contentions, and cannot establish good cause for leave to amend now.

Moreover, indefiniteness and lack of written description are invalidity defenses based largely on the claim language and the patents' specification.  *See Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (the written description requirement "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art"); *Biosig Instruments, Inc. v. Nautilus, Inc.*, 715 F.3d 891, 898 (Fed. Cir. 2013) ("when determining indefiniteness" the Court will "primarily consider the intrinsic evidence consisting of the claim language, the specification, and the prosecution history.") (citation omitted).[4]  Cisco could have examined the patents' specification and made

---

[3] In light of the language in the March 2013 disclosure—nearly identical to Cisco's characterization of Dr. Schlecht's testimony, and recognized by Cisco in its May 2013 contentions—Cisco's claim that "[n]o document that SynQor has produced to date includes the information revealed at the depositions" (Mot. 10) is simply incorrect.

[4] Lack of written description and lack of enablement are separate and distinct defenses.  *See Ariad Pharms.*, 598 F.3d at 1351 ("Since its inception, this court has consistently held that § 112, first paragraph, contains a written description requirement separate from enablement.").  Yet Cisco's motion (and its proposed amended contentions) mistakenly lumps the defenses together, and provides no specificity as to which it seeks leave to contend.  To the extent it suggests anything, Cisco seems to identify only a written description defense.  (*See* Mot. 4 ("[T]he '190 patent descriptions are inadequate to show possession of the invention.").)  Section 112's enablement requirement, in contrast, "is met when at the time of filing the application one skilled in the art, having read the specification, could practice the invention without 'undue

4

arguments about what it does and does not say without having the inventor confirm that certain words do or do not appear in it, particularly in light of SynQor's March 2013 infringement contentions accusing Cisco's replacement converters.  Nothing in Dr. Schlecht's testimony alters the contents of the intrinsic evidence.  If anything, Dr. Schlecht's testimony made clear that the specification fully supported having an unregulated stage or converter—what the claims require, and accordingly all the support demanded by the written description requirement, as explained further below.  (*See, e.g.*, Ex. 4 (Schelcht Dep.) 192:18–193:7, 193:23–194:6, 195:1–12, 196:9–19, 197:3–12, 198:3–7, 199:18–200:2.)

Cisco is also wrong when it suggests that its motion "only seeks to add much stronger support for invalidity defenses laid out in its initial invalidity contentions." (Mot. 10.)  While Cisco's initial invalidity contentions raised indefiniteness, written description, and enablement arguments, the arguments made in those contentions were very different from the ones it seeks to raise here.  After all, Cisco would not be seeking leave at this late date if its invalidity contentions already encompassed the defenses it wants to add through this motion.

Not only is its proposed amendment untimely, but it would be prejudicial to SynQor. This case is nearing the end of fact discovery, and the Court has already issued its *Markman* ruling.  If Cisco had raised these issues earlier, SynQor would have had the opportunity to address them in the recent *Markman* briefing, and the Court could have resolved the issues in its now-issued *Markman* order.[5]  In particular, Cisco raises the issue of indefiniteness, which is

---

experimentation.'"  *Cephalon, Inc. v. Watson Pharms., Inc*., 707 F.3d 1330, 1336 (Fed. Cir. 2013).  Cisco does not anywhere argue that Dr. Schlecht's or Dr. Leeb's testimony suggests that one skilled in the art could not practice the invention without "undue experimentation." (*See generally* Mot. 3–5.)

[5] Cisco had ample opportunity to do so.  SynQor's infringement contentions put Cisco on notice of SynQor's position regarding the meaning of the term "non-regulating" in the asserted claims in

appropriately and commonly resolved in claim construction.  *See ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012) ("[I]ndefiniteness is a question of law and in effect part of claim construction."); *see also 3M Innovative Properties Co. v. Tredegar Corp.*, 725 F.3d 1315, 1333 (Fed. Cir. 2013) ("In order to be indefinite, reasonable efforts at claim construction must result in a definition that does not provide sufficient particularity or clarity to inform a skilled artisan of the bounds of the claim.").  Cisco in fact raised one indefiniteness issue in the recent claim construction proceedings, which this Court properly rejected.  (Dkt. No. 306 at 30–32.)  If Cisco had also raised this new issue as well, SynQor could have responded, and the Court resolved it.  Cisco's written description argument also raises issues concerning the scope of the "regulating" and "non-regulating" terms construed by Judge Ward in the '497 case, constructions which were adopted by agreement in this case.  Permitting these contentions now would thus also waste judicial resources, especially given that the Court's ruling has triggered the deadlines for expert reports, the first round of which come due in less than 60 days.  A continuance at this late date would compound, not cure, the prejudice to SynQor, by either compressing the pretrial schedule or putting the trial date at risk.

## B.    Cisco's Proposed Amendments Are Otherwise Futile.

Even if the Court were to excuse Cisco's unreasonable and prejudicial delay (and it should not), the amendments should still be denied as futile.  *See S&W Enterprises*, 315 F.3d at 536 (establishing good cause requires establishing the importance of the amendment sought).  Section 112 ¶ 1 requires disclosure that "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter." *Ariad*, 598 F.3d at 1351.  The asserted patents claim a non-regulating isolation stage or converter, and Cisco does not even argue that

---

March 2013, and the process of exchanging terms for claim construction began months later, in July 2013.

the specification fails to disclose such a stage or converter.  (*See generally* Mot. 3–5.)  Instead, Cisco argues that the specification does not disclose *both* "an unregulated and regulated mode" of operation.  (*Id.* at 3.)  But the claims in question are "comprising" claims, which do *not* require disclosure of every other feature or element that might be added on to what has been disclosed and claimed.  *See KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) ("[T]he transition 'comprising' creates a presumption that the recited elements are only a part of the device, that the claim does not exclude additional, unrecited elements.").  What is claimed is a system "comprising" a non-regulating isolation stage or converter; so long as that is supported by the specification (and there is no dispute that it is), the written description requirement is satisfied.  The specification need only support what is claimed.  *See Energy Transp. Group, Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1350 (Fed. Cir. 2012) (affirming denial of JMOL of invalidity where specification "provide[d] adequate written description to support the full scope of the claims as construed").[6]

Cisco's indefiniteness argument—an attempt to construe the claims as indefinite mixed method and system claims (*see* Mot. 5–7)—also fails on the merits, rendering its proposed amendment futile.  The claims are directed at a system that includes a non-regulating isolation stage (or converter) as well as a plurality of non-isolated regulation stages.  A given end product with those components either infringes or does not infringe the asserted system claims, based on the end product in question.  For example, as SynQor's infringement contentions explained in March 2013, Cisco's end products incorporating the accused new replacement bus converters

---

[6] The statement Cisco cites from the prosecution history of other patents (*see* Mot. 5) is not inconsistent with SynQor's infringement contentions as to the patents asserted here.  The '190 patent specification does not need to explicitly disclose two "modes of operation" (Mot. 5) in order for what is claimed in the '190 patent to be adequately described—the specification needs only to disclose a non-regulating isolation stage or converter, which it does.

infringe those claims because they are configured to utilize an unregulated voltage within their operational range.  It is immaterial whether the bus converter component could be sold and incorporated into a device which might not trigger those input voltages.  Infringement turns on how the end product is configured for ordinary use.

Because SynQor's system claims are straightforward claims, with limitations based only the capabilities of the claimed devices, Cisco's reliance on *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005) is misplaced.  In *IPXL*, the claim at issue was indefinite for reciting both a "system" with "input means" but also that the "user uses the input means" in a particular fashion—in other words, reciting both a system and a method of using that system in the same claim.  *Id.* at 1377.  Cisco identifies no claim language in the asserted apparatus claims of SynQor's patents that suggests a method of using the claimed converter or stage.  (*See* Mot. 5–7.)  Instead, Cisco points to the inventor's deposition testimony, but the cited testimony only explains that while a product's datasheet may indicate one range of operation, the product's operational range of voltages may be broader, and that broader range could be used by a customer.  (*See* Mot. 5.)  SynQor's expert's cited testimony is no different—to know whether a product is unregulated at input voltages within its operational range (meaning it infringes the system claim), one would need to consider all evidence of what that operational range is.  (*Id.*)  At no point did either deponent assert that infringement would only occur when a customer used a Cisco product according to a particular method.[7]  Accordingly, *IPXL* and its indefiniteness holding are irrelevant.

---

[7] Even if the testimony suggested otherwise—and it does not—it would be irrelevant, and the claim definite, because as drafted the claim does not recite a system and a method of its use.  *See Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1367 (Fed. Cir. 2003) ("[The claim] is not indefinite as construed from intrinsic evidence, therefore reference to extrinsic evidence is

### III.    CONCLUSION

For the reasons set out above, Cisco's motion for leave to amend its invalidity contentions should be denied.

Dated:   January 10, 2014

/s/ Thomas D. Rein

**Thomas D. Rein** (*admitted pro hac vice*)
Lead Attorney
trein@sidley.com
**Russell E. Cass** (*admitted pro hac vice*)
rcass@sidley.com
**Stephanie P. Koh** (*admitted pro hac vice*)
skoh@sidley.com
**Bryan C. Mulder**  (*admitted pro hac vice*)
bmulder@sidley.com
**Nathaniel C. Love** (*admitted pro hac vice*)
nlove@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone:     312.853.7000
Facsimile:     312.853.7036

**Michael D. Hatcher**
Texas State Bar No. 24027067
mhatcher@sidley.com
**David T. DeZern**
Texas State Bar No. 24059677
ddezern@sidley.com
SIDLEY AUSTIN LLP
717 North Harwood, Suite 3400
Dallas, TX 75201
Telephone:     214.981.3300
Facsimile:     214.981.3400

*ATTORNEYS FOR PLAINTIFF SYNQOR, INC.*

---

improper.  When an analysis of intrinsic evidence resolves any ambiguity in a disputed claim term, it is improper to rely on extrinsic evidence to contradict the meaning so ascertained.").

## CERTIFICATE OF SERVICE

I hereby certify that a copy of SynQor's Opposition to Defendant Cisco Systems, Inc.'s Motion for Leave to Amend Supplemental Invalidity Contentions, and accompanying exhibits, are being served on counsel of record via ECF on January 10, 2014.

/s/ Nathaniel C. Love