# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF TEXAS

# MARSHALL DIVISION

| | |
|---|---|
| SYNQOR, INC., <br><br> Plaintiff <br><br> v. <br><br> CISCO SYSTEMS, INC. and <br><br> VICOR CORPORATION, <br><br> Defendants. | Civil Action No. 2:11-CV-54-MHS-CMC <br><br> **JURY TRIAL DEMANDED** |

# DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S CLAIM CONSTRUCTION ORDER [DKT. 306] AND MOTION FOR RECONSIDERATION OF SAME

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 72 and Local Rule CV-72, Defendants Cisco Systems, Inc. and Vicor Corporation (collectively, "Defendants") respectfully request that this Court reconsider and overrule in part the January 2, 2014 Claim Construction Order ("January 2, 2014 *Markman* Order") entered by Magistrate Judge Caroline M. Craven (Dkt. 306). Defendants specifically object to the constructions of the terms "transition times which are short," "fixed duty cycle," "control circuit which controls duty cycle," and "means for controlling duty cycle" on the bases set forth in Defendants' Responsive Claim Construction Brief (Dkt. 280), in the *Markman* Presentation attached as Exhibit A, in the transcript from the *Markman* Hearing attached as Exhibit B, and for the reasons set forth below.

## II. STANDARD OF REVIEW

Claim construction is a question of law. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455-56 (Fed. Cir. 1998) (en banc). As such, a Magistrate Judge's claim construction findings and recommendations are subject to *de novo* review by the District Court. *Innova Patent Licensing, LLC v. Alcatel-Lucent Holdings*, 2:10-CV-251, 2012 WL 2958231, *1 (E.D. Tex. July 19, 2012); *ICHL, LLC v. NEC Corp. of Am.*, 5:08-CV-065, 2010 WL 8938594, *2 (E.D. Tex. Sept. 20, 2010).

## III. ARGUMENT

### A. The Construction of "Transition Times Which Are Short" Is Erroneous in Part

In the January 2, 2014 *Markman* Order, the Magistrate Judge construed the term "transition times which are short" to mean "the sum of all transition times totals less than 20% of the overall on-state and off-state times of the controlled rectifiers." Dkt. 306 at 20. Defendants agree with this construction to the extent that it adopts Defendants' proposal that "the sum of all

transition times totals less than 20%" of the total switching cycle. In fact, in its claim construction briefing, SynQor did not dispute that "the sum of all transition times totals less than 20% of the total switching cycle." Dkt. 277 at 15, fn. 8. However, Defendants respectfully submit that the January 2, 2014 *Markman* Order errs in failing to adopt Defendants' proposal that the construction include the statement that "[f]ull resonant, quasi-resonant and multi-resonant converters do not have short transitions." Dkt. 306 at 19-20.

The inclusion of this disclaimer language is fully supported by the intrinsic record and is essential to resolving one of the key issues in dispute in the case. Dkt. 280, Ex. 3, Corr. Horenstein Decl., at ¶ 77. Indeed, during the earlier patent case, *SynQor, Inc. v. Artesyn Techs., Inc.*, et al., Case No. 2:07-cv-497 ("the '497 case"), SynQor sought to avoid certain prior art through construction of this claim limitation, explicitly arguing that the Common Specification[1] of the asserted patents includes a "disavowal of resonant converters." Dkt. 280, Ex. 1, '497 Case, SynQor Opening Claim Construction Brief, at 29. SynQor has now completely reversed its position, and alleges that Vicor's resonant converters infringe the asserted patents, thus bringing this claim construction issue to the forefront of the parties' dispute.

          1.      <u>SynQor Clearly Made a Blanket Disavowal of Resonant Converters</u>

SynQor clearly disavowed resonant converters in the Common Specification. The Common Specification teaches the use of voltage waveform transitions on the transformer windings to turn switches on and off at appropriate times, thereby achieving "nearly lossless" switching. U.S. Patent No. 7,072,190 ("the '190 patent") at 8:8. The specification further teaches that those transitions must be short, and specifically contrasts those transitions with

---

[1] With the exception of U.S. Patent No. 7,272,021 ("the '021 patent"), the asserted SynQor patents share a common specification (hereinafter "Common Specification"). The '021 patent incorporates the Common Specification by reference. For ease of reference, citations herein are made to the specification of U.S. Patent No. 7,072,190 ("the '190 Patent") to identify elements of the Common Specification.

transitions "used in full resonant, quasi-resonant, or multi-resonant converters where the oscillations last for a large portion, if not all, of the on-state and/or off-state time." '190 patent at 8:16-19. As SynQor has repeatedly admitted, this statement was a disavowal of resonant converters. Ex. A at 10; Dkt. 280, Ex. 1, '497 Case, SynQor Opening Claim Construction Brief, at 29.

Indeed, SynQor has repeatedly told the PTO—and thus the interested public—that resonant converters should be excluded from the scope of its invention. SynQor continued to make this clear and unmistakable disclaimer *even after* the *Markman* ruling in the '497 case that purportedly changed its understanding of the claim scope. "The prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct, such as designing around the claimed invention." *Seachange Int'l, Inc. v. C-Cor, Inc.*, 413 F.3d 1361, 1372 (Fed. Cir. 2005) (quoting *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000)). This Court has prohibited a patentee from construing a claim one way to distinguish prior art in the PTO, and then taking a contrary position in litigation. *See Beneficial Innovations, Inc. v. Blockdot, Inc.*, No. 2:07- cv-263, 2010 WL 2246291, at *2 (E.D. Tex. June 3, 2010).

Here, to avoid invalidating prior art, SynQor told the PTO that certain art—Steigerwald '539—does not have "short transitions" because Steigerwald '539 discloses resonant converters:

> Steigerwald '539 does not teach that 'less than 20% of the time is taken up by transition.' **Rather, Steigerwald '539 clearly teaches a resonant converter (as admitted by the Request, p. 148), and therefore was expressly excluded from the definition**, which is 'distinct from that used in full resonant, quasi-resonant, or multi-resonant converters where the oscillations last for a large resonant converters, portion, if not all, of the on-state and/or off state time.
> \* \* \*

> In the end, **both JP '446 and Steigerwald '539 have 'long' transitions, as shown by the very waveforms in these documents, because they are specifically resonant topologies**.

Ex. A at 13; Dkt. 280, Ex. 5, SynQor Response to Office Action Control No. 95/001207, at 67-68.

SynQor's disavowal of resonant converters was repeated in 2011, long after the July 2010 *Markman* order in the '497 case issued. For example, SynQor argued in reexamination that "[r]esonant sinusoidal waveforms do not have the short transitions required to drive controlled rectifiers. Rather, slow waveform transitions (inherent in a sinusoidal waveform) make it difficult for controlled rectifiers to be driven reliably." Dkt. 280, Ex. 6, SynQor Response to Office Action (Control No. 95/001,406), at 52-53. SynQor further argued that "Steigerwald's capacitance-multiplier converter is a resonant forward converter, and the voltage across a primary winding of the converter is sinusoidal in shape . . . [a]s such, the voltage waveform does NOT have short transitions compared to the length of the half-cycle…." *Id.* at 53.

SynQor's repeated disparagement of resonant converters confirms that SynQor clearly and unambiguously disclaimed resonant converters from the scope of the patent claims. *See Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1372 (Fed. Cir. 2012) ("[R]epeated derogatory statements about [certain subject matter] reasonably may be viewed as a disavowal of that subject matter from the scope of the Patent's claims."). It was therefore error not to include SynQor's disavowal of full resonant, quasi-resonant and multi-resonant converters in the construction of "transition times which are short."

    2.    <u>At Minimum, SynQor's Disavowal of Resonant Converters with Long Transition Times Should Be Included in the Construction</u>

Indeed, in reaching its construction, the Magistrate Judge acknowledged that SynQor has disavowed resonant converters, but noted that "the 20% limitation [on transition times] was the

point of distinction relied upon" with respect to the disclaimer. Dkt. 306 at 20. In other words, the January 2, 2014 *Markman* Order appears to find that SynQor clearly and unambiguously disavowed resonant converters with transitions greater than 20% of the switching cycle. *Id.* Despite this acknowledgment, the Magistrate Judge did not include SynQor's disavowal of resonant converters with transitions greater than 20% of the switching cycle in the construction. *Id.* To the extent this Court is not inclined to adopt Defendants' proposed construction for "transition times which are short" in its entirety, Defendants respectfully request that the Magistrate Judge's construction be modified to incorporate the portion of the disavowal that is not reasonably in dispute, which is the disavowal of full-resonant, quasi-resonant, and multi-resonant converters with transition times greater than 20% of the switching cycle.

      **B.**      <u>**The Construction of "Fixed Duty Cycle" is Erroneous**</u>

The January 2, 2014 *Markman* Order adopts a compromise construction that "fixed duty cycle" is "a duty cycle that is not varied to control the output voltage towards a predefined value." Dkt. 306 at 10-11. Defendants respectfully object to the January 2, 2014 *Markman* Order's construction of the fixed duty cycle limitation and ask the Court to set this construction aside, because it does not actually resolve the parties' dispute—namely, whether a duty cycle that changes ***in response to changes in input voltage or load*** is nonetheless "fixed."

SynQor's expert, Dr. Leeb, correctly stated that "a fixed duty cycle means that the duty cycle of the power switches is not varied to control the output towards a set point / predefined value." Dkt. 280 at 20-21. This is an accurate factual statement about what a fixed duty cycle is in the context of the claims, just as the Court's construction is an accurate statement about what a fixed duty cycle is in the context of the claims. But the fact that a statement about a claim term is accurate does not mean that it resolves the dispute between the parties about the scope of the claim. *See O2 Micro International v. Beyond Innovation Technology Co.*, 521 F.3d 1351, 1362

(Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

The January 2, 2014 *Markman* Order's construction improperly collapses the "non-regulating" limitation with the separate "fixed duty cycle" limitation. Representative claim 1 of the '190 patent states:

> A power converter system comprising:
>
> a DC power source;
>
> a ***non-regulating isolation stage*** comprising:
>
>> a primary transformer winding circuit having at least one primary winding connected to the source; and
>>
>> and a secondary transformer winding circuit having at least one secondary winding coupled to the at least one primary winding and having plural controlled rectifiers, each having a parallel uncontrolled rectifier and each connected to a secondary winding, each controlled rectifier being turned on and off in synchronization with the voltage waveform across a primary winding to provide an output, each primary winding having a voltage waveform ***with a fixed duty cycle*** and transition times which are short relative to the on-state and off-state times of the controlled rectifiers; and
>
>> a plurality of non-isolating regulation stages, each receiving the output of the isolation stage and regulating a regulation stage output while the fixed duty cycle of the isolation stage is maintained.

'190 patent, claim 1 (emphases added).

The January 2, 2014 *Markman* Order construing "fixed duty cycle" to mean "a duty cycle that is not varied to control the output voltage towards a predefined value," effectively reads out the separate "fixed duty cycle" limitation out of the claim and imports the definition of "non-regulating" into the meaning of "fixed duty cycle." Dkt. 280, Ex. 8 at 20 ("non-regulating" means "not controlling an output towards a predefined value"). This is redundant and fails to given any meaning to the "fixed duty cycle" limitation. The patentee elected to use separate

terms for these two distinct structural features of the patented invention—"non-regulating" and "fixed duty cycle." *See, e.g.*, *Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) ("Where a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention."); *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1404–05 (Fed. Cir. 1996) (concluding that where a claim provides for two separate elements, a "second portion" and a "return portion," these two elements "logically cannot be one and the same").

To resolve the parties' dispute, the Court must determine whether "fixed duty cycle" does or does not encompass duty cycles that change in response to changes in input voltage or load. Merely repeating the definition of "non-regulating" as the definition of "fixed duty cycle" (as the Magistrate Judge's construction does) gives no independent meaning to the separately claimed "fixed duty cycle," and does not resolve the parties' dispute.

For the reasons set forth in Defendants' Response to SynQor's Opening Claim Construction Brief and at the *Markman* hearing, the Court should construe the term "fixed duty cycle" to mean "a duty cycle that remains unchanged regardless of input voltage or load." *See* Dkt Nos. 280 and 303.  Defendants' construction reflects the purpose of having a duty cycle that remains "fixed."  The specification makes clear the duty cycle is fixed to perform regulation. '190 patent at 4:51-56.  SynQor's patents describe using a less-expensive, unregulated converter that does not have complicated feedback loop circuitry that controls its output voltage.  This is why the claims require a "fixed duty cycle"—the duty cycle is "fixed" so that it does *not* regulate the output voltage in response to changes in input voltage or load.  Consistent with the specification, Defendants' construction makes clear that a change in duty cycle for the purposes of regulation—in other words, a change in duty cycle that is triggered by a change in input

voltage or load—means that the duty cycle is not fixed, regardless of the size of that change. But a fixed duty cycle can have other changes—including changes that are triggered by temperature—and still be "fixed." *See, e.g.*, Ex. 267-1, Leeb Decl., at ¶ 13. In other words, the specification describes varying the duty cycle in order to keep the output voltage fixed, regardless of changes in input voltage or load. This construction preserves the patentee's intent to distinguish the "fixed duty cycle" limitation from the separate "non-regulating" limitation, and gives meaning and effect to each limitation.

C. **The Construction of "Control Circuit Which Controls Duty Cycle of the Primary Circuit Winding" is Erroneous**

Defendants respectfully object to the Magistrate Judge's decision not to construe the "control circuit" limitation. The January 2, 2014 *Markman* Order incorrectly states that Defendants do not rebut the concept that the ordinary meanings of "controlling" and "maintaining" are not the same. However, Defendants made clear—both in their briefing and in argument at the claim construction hearing—that the term "to control" has more than one "ordinary meaning."

The phrase "controls duty cycle" could mean either: maintains the duty cycle (*e.g.*, "the cruise control controls the speed"), or increases or reduces the duty cycle (*e.g.*, "a volume knob controls the volume"). Ex. B at 110. Indeed, SynQor itself agreed that these two terms— "maintain" and "increase or reduce" are different meanings for the word "control." Dkt No. 277 at 26. In the context of the '021 patent, "controls duty cycle" means "maintains the duty cycle," not "reduces or increases the duty cycle." The claims distinguish between controlling the duty cycle during "normal" operation, and reducing the duty cycle during "other than normal" operation. *Compare* '021 patent claim 1 *with* '021 patent claim 2; *compare* '021 patent claim 47 *with* '021 patent claim 48; *see also* claim 17.

Further, the '021 patent specification explains that during normal operation, the control circuit maintains the duty cycle. *See, e.g.*, '021 patent at 4:8-10, 4:54-58 (describing the pulse width modulator (PWM) control chip of the "control circuit" schematic as being "*normally operated* such that the gate drive signals . . . give the *fixed duty cycle operation*" of the isolation stage"). The specification contrasts this normal operation, in which the duty cycle of the primary winding circuit is maintained, with periods of "other than normal operation" (such as during start up or a short circuit), in which the duty cycle of the primary winding circuit may be reduced. '021 patent at 2:19-22 ("The duty cycle … may be *reduced* . . . in *other than normal operation*." '021 patent at 2:19-21.

The claims consistently draw the same distinction. *Compare* '021 patent, claims 1, 31, 47 (claiming "control" of, or "controlling," the duty cycle during normal operation) *with* claims 2, 17, 20, 32 (claiming "reduction" of, or "reducing" the duty cycle during periods "***other than*** normal operation"). Moreover, while claim 47 of the '021 patent claims a "means for *controlling* duty cycle during normal operation," claim 48 recites:

> A system as claimed in claim 47 ***further comprising*** means for ***reducing*** the duty cycle of the primary winding circuit to cause freewheeling period in other than normal operation.

This distinction supports a construction that "controlling" a duty cycle in the context of the '021 patent means "maintaining" it—*i.e.*, "control" has its "maintain" meaning rather than its "increase or reduce" meaning. *See Liebel-Flarsheim Co. v. Medrad, Inc*, 358 F.3d 898, 910 (Fed. Cir. 2004) ("the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim") (citing *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001)).

D. **The Construction of the "Means for Controlling Duty Cycle" Is Erroneous**

Defendants respectfully submit that the January 2, 2014 *Markman* Order also errs by failing to find the claimed structure for the "means for controlling duty cycle of the power to the primary winding" to be indefinite.[2] The January 2, 2014 *Markman* Order holds that the control circuit shown in Figs. 4A-4D and described in 4:32-5:5 of the '021 patent performs the claimed function. *See* Dkt. 306 at 32. This is in error.

Functional claims are permitted under 35 U.S.C. § 112, ¶ 6 only when those claims are bound by the specification. Functional claims without a clear connection to sufficient structure in the specification are indefinite and therefore invalid. *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997) (holding that a disclosed structure "corresponds" to the claimed function only if "the specification or prosecution history clearly links or associates that structure to the function recited in the claim."); *see also Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1299 (Fed. Cir. 2005) (holding claim invalid as indefinite "[because] the specification fails to clearly link the POS terminal, or any part thereof, to the distributing function."); *IGT v. Alliance Gaming Corp.*, No. 2:04-cv-1676, 2007 WL 6334816, at *11 (D. Nev. May 9, 2007) (finding claim invalid because "the specification fails to make any connection to the slot machine reels or to any signals sent to such reels.").

There is no component in the '021 patent that is clearly linked and associated with the claimed function. Dkt. 306 at 32. Specifically, there is not a sufficient disclosure as to what component or components are capable of controlling the duty cycle of the power to the primary winding. Nor is there any disclosure as to what causes substantially uninterrupted flow of power during normal operation to provide an isolated output without regulation. As such, there is no

---

[2] This term was not argued during the Markman hearing. Instead, the parties agreed to submit this term on the papers. Ex. B at 114.

disclosure that would allow a person of skill in the art to know how to carry out the recited function. *Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1385 (Fed. Cir. 2009) ("The question before us is whether the specification contains a sufficiently precise description of the 'corresponding structure' to satisfy section 112, paragraph 6, not whether a person of skill in the art could devise some means to carry out the recited function.").

The January 2, 2014 *Markman* Order notes that the corresponding relevant structure is found at Col. 4:32-5:5, and FIGS. 4A, 4B, 4C, and 4D of the '021 patent. Dkt. 306 at 32. But the discussion at Col. 4:32-5:5 of the '021 patent covers topics ranging from how to reduce voltage at a non-regulating isolation stage to protecting against short-circuit conditions, and fails to clearly identify a structure that corresponds with "controlling the duty cycle of the power to the primary winding such that the duty cycle causes substantially uninterrupted flow of power through the primary and secondary windings during normal operation to provide an isolated output without regulation." Even its most pertinent language merely references a class of control chips that when "normally operat[ed]" facilitate a fixed duty cycle. The cited passage therefore fails to reference the component or components that both control the duty cycle and create a substantially uninterrupted flow of power during normal operation. Consequently, the cited passage fails to teach a person of skill in the art how to carry out the recited functions.

Based on the foregoing, this Court should overrule the January 2, 2014 *Markman* Order and find that the '021 patent claims do not disclose sufficient structure and provide no way for "interested members of the public, *e.g.*, competitors of the patent owner" to "determine whether or not they infringe." *Default Proof Credit Card Sys., Inc.*, 412 F.3d at 1302-03.

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court reconsider and overrule in part the January 2, 2014 *Markman* Order.

Dated: January 16, 2014  Respectfully submitted,

By: */s/ David A. Nelson*

Charles Kramer Verhoeven (*pro hac vice*)
charlesverhoeven@quinnemanuel.com
Linda J. Brewer (*pro hac vice*)
lindabrewer@quinnemanuel.com
Kathy K. Peng (*pro hac vice*)
kathypeng@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: 415-875-6700
Facsimile: 415-875-6700

David A. Nelson
davenelson@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
500 West Madison Street, Ste 2450
Chicago, IL 60661
Telephone: 312-705-7465
Facsimile: 312-705-7401

Robert E. Hillman (*pro hac vice*), hillman@fr.com
Lawrence K. Kolodney (*pro hac vice*), kolodney@fr.com
**FISH & RICHARDSON P.C.**
One Marina Park Drive
Boston, MA 02210-1878
Telephone: 617-542-5070
Facsimile: 617-542-8906

Stephen A. Marshall (*pro hac vice*), smarshall@fr.com
**FISH & RICHARDSON P.C.**
1425 K Street, NW
Suite 1100
Washington, DC 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

David A. Gerasimow (*pro hac vice*), gerasimow@fr.com
**FISH & RICHARDSON P.C.**
3200 RBC Plaza, 60 South 6th St.

        Minneapolis, MN 55402
Telephone: 612-335-5070
Facsimile: 612-288-9696

Eric H. Findlay, Texas Bar No. 00789886
efindlay@findlaycraft.com
**FINDLAY CRAFT, LLP**
6760 Old Jacksonville Highway, Suite 101
Tyler, TX 75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137

*Attorneys for Defendant Vicor Corporation*

By: By:  */s/ Louis W. Tompros*

\William F. Lee
  Admitted *pro hac vice*
  Email: william.lee@wilmerhale.com
Louis W. Tompros
  Admitted *pro hac vice*
Email: louis.tompros@wilmerhale.com


Richard A. Goldenberg
  Admitted *pro hac vice*
  Email: richard.goldenberg@wilmerhale.com
Andrew J. Danford
  Admitted *pro hac vice*
  Email: andrew.danford@wilmerhale.com
Dana O. Burwell
  Admitted *pro hac vice*
  Email: dana.burwell@wilmerhale.com
**WILMER CUTLER PICKERING**
 **HALE AND DORR LLP**
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Rachel L. Weiner
  Admitted *pro hac vice*
  Email: rachel.weiner@wilmerhale.com
Jonathan Uffelman
  Admitted *pro hac vice*
  Email: jonathan.uffelman@wilmerhale.com
**WILMER CUTLER PICKERING**

**HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Andrea Pacelli
  Admitted *pro hac vice*
  Email: andrea.pacelli@wilmerhale.com
**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

Douglas M. Kubehl
douglas.kubehl@bakerbotts.com
Kurt Max Pankratz
kurt.pankratz@bakerbotts.com
Christa Brown-Sanford
christa.brown-sanford@bakerbotts.com
Roshan S. Mansinghani
roshan.mansinghani@bakerbotts.com
R Scott McClelland
scott.mcclelland@bakerbotts.com
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 600
Dallas, Texas 75201-2980
Telephone: (214) 953-6584
Facsimile: (214) 953-4584

Allen Franklin Gardner
State Bar No. 24043679
**POTTER MINTON**
A Professional Corporation
110 N. College, Suite 500
Tyler, Texas 75702
(903) 597 8311
(903) 593 0846 (Facsimile)
allengardner@potterminton.com

*Attorneys for Defendant Cisco Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 16th of January 2014, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

By /s/ Kathy Peng